United States District Court
Southern District of Texas
**ENTERED**
December 01, 2015
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL DESHAWN WINFREY, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-15-1936 |
| | § | |
| WILLIAM STEPHENS, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM OPINION AND ORDER**

State inmate Michael DeShawn Winfrey, proceeding *pro se*, filed a section 2254 habeas petition challenging his 2011 conviction and life sentence for capital murder. Respondent filed a motion for summary judgment (Docket Entry No. 15), to which petitioner filed a response (Docket Entry No. 16).

Based on consideration of the pleadings, the motion and response, the record, and the applicable law, the Court GRANTS the motion for summary judgment and DISMISSES this case for the reasons that follow.

*Procedural Background and Claims*

Petitioner was convicted of capital murder in Fort Bend County, Texas, on July 28, 2011, and sentenced to life imprisonment. The conviction was affirmed on appeal in an unpublished opinion. *Winfrey v. State*, No. 01-11-00654-CR (Tex. App. – Houston [1st Dist.] 2013, pet. ref'd). The Texas Court of Criminal Appeals refused discretionary review on August 21, 2013. *In re Winfrey*, PD-0638-13 (Tex. Crim. App. 2013).

Petitioner's application for state habeas relief, filed with the trial court on October 23, 2014, was denied by the Texas Court of Criminal Appeals on May 10, 2015.

Petitioner filed the instant federal petition on June 1, 2015, raising the following grounds for habeas relief:

1. Trial counsel was ineffective in failing to:

    a. properly investigate the case;

    b. challenge a suggestive out-of-court identification.

2. There is no evidence to support the conviction.

3. The prosecutor coerced false testimony from a witness.

4. The State violated *Brady* by withholding favorable evidence.

Respondent argues that petitioner's claims are barred by limitations and, in the alternative, are without merit.

## *The Applicable Legal Standards*

*Habeas Review*

This petition is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254. Under the AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, 562 U.S. 86, 98–99 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§

2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id*. at 411. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102. As stated by the Supreme Court in *Richter*,

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal.

*Id.*, at 102–03 (emphasis added; internal citations omitted).

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on

3

a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller–El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller–El*, 537 U.S. at 330–31.

*Summary Judgment*

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

While summary judgment rules apply with equal force in a section 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings. Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant. Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, the state court's findings must be accepted as correct by

the federal habeas court. *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

### *Analysis*

#### *Statute of Limitations*

Petitioner's federal habeas petition is governed by the limitations provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Under AEDPA, federal habeas corpus petitions are subject to a one-year limitations period found in 28 U.S.C. § 2244(d), which provides as follows:

(d)(l) A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

   (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

   (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

   (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

   (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent

>    judgment or claim is pending shall not be counted toward any period of
>    limitation under this subsection.

28 U.S.C. §§ 2244(d)(l), (2).

For purposes of the instant petition, federal limitations commenced under section 2244(d)(1)(A) at "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." The Texas Court of Criminal Appeals rejected discretionary review on August 21, 2013. Petitioner did not pursue a writ of certiorari in the United States Supreme Court, and his conviction became final for purposes of AEDPA on November 19, 2013. Limitations expired one year later, on November 19, 2014. Petitioner's application for state habeas relief, filed with the trial court on October 23, 2014, was denied by the Texas Court of Criminal Appeals on May 10, 2015. Consequently, the deadline for filing the instant federal petition was June 17, 2015.

Although petitioner states that he filed this petition on June 1, 2015, respondent presents probative summary judgment evidence establishing that petitioner did not give the petition to prison officials for mailing until June 30, 2015, *after* expiration of limitations. (Docket Entry No. 15, Exhibit A.) Respondent further shows that the certified mail number on petitioner's envelope for mailing the petition matches the certified mail number on the prison mail log. *Id.*; Docket Entry No. 1. Respondent argues that the instant petition is time-barred under 28 U.S.C. § 2244(d)(1)(A).

In response, petitioner alleges that he initially mailed the petition on June 1, 2015, but that he used an incorrect mailing address and it was returned to him. He then re-mailed it on June 30, 2015, and this Court received it on July 7, 2015. Petitioner did not change the mailing date on his verification of mailing. This Court notes that petitioner's allegations in his response were not made under penalty of perjury, and do not constitute probative summary judgment. Moreover, petitioner presents no probative summary judgment evidence that the mailing was subsequently returned to him due to an incorrect address, or of the date on which it was returned.[1]

Petitioner argues that these deficiencies are unimportant, because the law requires this Court to honor as the official mailing date the original mailing date. Petitioner cites no relevant or applicable authority for his argument. His reliance on *Houston v. Lack*, 493 U.S. 920 (1989), and *Spotville v. Cain*, 149 F.3d 374 (5th Cir. 1998), is not entirely appropriate, as those cases did not discuss the consequences, if any, of an inmate's use of an incorrect zip code that resulted in a return of the mailing to him. Petitioner cites no authority in support of his argument that his own act of misaddressing his mailing envelope – and its subsequent return to him – had no impact on the timeliness of his federal petition.

---

[1] Petitioner has submitted a purported copy of the mail log entry for his original mailing. (Docket Entry No. 16, Exhibit A-2.) The entry shows that petitioner used the correct post office box number for the Court, but used an incorrect zip code number. However, neither petitioner nor a prison official attested that the copy was a true and correct copy of the original mail log document.

Because he contends that his original mailing resulted in a "timely filing," petitioner does not request application of equitable tolling. Had petitioner requested equitable tolling based on his use of an incorrect mailing address, the Court would not have granted relief. The AEDPA statute of limitations can be equitably tolled, but only in "rare and exceptional circumstances." *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998). To merit equitable tolling, a petitioner must diligently pursue his post-conviction relief. *Coleman v. Johnson*, 184 F.3d 398, 403 (5th Cir. 1999). Specifically, he must show that he pursued his rights diligently, and that some extraordinary circumstance stood in his way and prevented timely filing. *Holland v. Florida*, 560 U.S. 631, 649 (2010). A petitioner who delays the filing of his state habeas application until the limitations period is almost expired, thus allowing himself too little time to file his federal petition once his state petition is denied, is not entitled to equitable tolling. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999). The timing of his state habeas application was a matter entirely within the petitioner's control. *Id*. In this case, petitioner did not file his state application until eleven months after his conviction became final. Neither petitioner nor the record explains this extensive delay, and thus, petitioner would not be entitled to equitable tolling. Petitioner does not demonstrate the exercise of due diligence throughout all aspects of his post-conviction proceedings.

Respondent is entitled to summary judgment dismissal of petitioner's habeas claims, as they are barred by the AEDPA one-year statute of limitations.

### *Merit of the Claims*

Even assuming petitioner's claims were timely, they have no merit. His claims of ineffective assistance of counsel regarding pretrial investigation and an out-of-court identification procedure are conclusory and unsupported in the record. Petitioner demonstrates neither deficient performance nor actual prejudice. The trial court rejected the claims on collateral review and denied habeas relief. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Habeas relief would be unwarranted.

Petitioner would fare no better on his claims that the State violated *Brady* and suborned perjury. As to the latter claim, the prosecution denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected. *Giglio v. United States*, 405 U.S. 150 (1972); *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996). To obtain habeas relief, a petitioner must show that: (1) the testimony was actually false, (2) the prosecutor knew it was false, and (3) the testimony was material. *Kirkpatrick v. Whitley*, 992 F.2d 491, 497 (5th Cir. 1993). Contrary to petitioner's arguments, contradictory testimony from witnesses, inconsistencies within a witness's testimony, and conflicts between reports, written statements, and trial testimony do not, standing alone, establish perjury. *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990). Petitioner fails to demonstrate that the prosecution knowingly elicited perjured testimony or

statements, or allowed false statements to stand uncorrected, and habeas relief would not be warranted on his claim.

Petitioner's *Brady* claims are equally unavailing. Petitioner argues that the "state forced witnesses to say what they wanted them to say, and threatened them with harsh punishment making their statements" involuntary. (Docket Entry No. 1, p. 8.) He also alleges that the State withheld "tapes" from the jury. (Docket Entry No. 2, p. 16.) To establish a *Brady* violation, a petitioner must make three showings: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Moore v. Quarterman*, 534 F.3d 454, 460–61 (5th Cir. 2008). Petitioner's conclusory allegations have no support in the record, nor does he identify any purportedly suppressed "tapes." The Fifth Circuit Court of Appeals has held that "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsubstantiated by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011–12 and n. 2 (5th Cir. 1983); *see also Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990). Petitioner presents no probative summary judgment evidence of coercion or threats, nor does he support his claims with evidence in the record. His conclusory allegations and bald assertions are insufficient to establish a *Brady* violation, and habeas relief would be unwarranted on his claim.

Nor would the Court find favor with petitioner's challenge to the sufficiency of the evidence. In affirming the conviction, the intermediate state court of appeals set forth the following statement of facts:

> In April 1994, Winfrey, Dalton Boudreaux, Kenneth Mouton, Otterrel Boutte, and Wilton George were cooking out, drinking, and smoking marijuana. Boudreaux drove the group to a nearby convenience store to buy beer. At the store, the men noticed Jeffrey Brown talking on a payphone, and wearing expensive-looking jewelry. Winfrey suggested robbing Brown. The men then went to another store across the street.
>
> As the men came out of the second store, they observed Brown in the parking lot. Winfrey told the others that he was going to rob Brown. George testified that he believed that Winfrey was joking. Boudreaux replied that he did not want any part of it, and he suggested that whoever wanted to leave to avoid being a part of Winfrey's proposed crime should get back in the car. Mouton and George got into the car with Boudreaux. Boutte was using a payphone to call his mother and told the men that he could walk back to the house.
>
> Brown sat in his car in the store parking lot with two of his young children. Winfrey walked up to Brown's car with a revolver and demanded that Brown give him everything. He threatened to shoot Brown's son. Winfrey shot Brown twice and fled. Bleeding from his wounds, Brown dragged himself into the store. Paramedics treated Brown at the scene, but he later died as a result of his gunshot wounds.
>
> The evidence was conflicting about whether Brown and Winfrey struggled before the shots. The evidence was also conflicting about whether Boudreaux's car was waiting at a stop sign on an adjacent street or was exiting the parking lot at the time of the shots.
>
> George, Boutte, Mouton, Boudreaux, and one of the Brown children testified that, after shooting Brown, Winfrey ran to Boudreaux's car on the street and jumped into the open back window. The other child, however, testified that Winfrey entered through the back door. One child testified that it appeared that the driver of the car was trying to get away from Winfrey by driving off. George testified that Mouton exited the car after the shots, chased Brown, and

> pulled the necklaces off Brown's neck as Brown dragged himself toward the convenience store. Neither of the children recalled seeing anyone exit the car after the shooting, and Mouton denied doing so. Boudreaux, Mouton, and George testified that they fought with Winfrey after getting back to the house, because they were angry that he had robbed the man. Boutte testified that he had observed the robbery and the shooting from the payphone, but that he did not know what Winfrey was doing until after the shooting.
>
> The men later learned while watching the news that Brown had died. After hearing this, Boudreaux reported his car stolen, and, with Boutte's assistance, he broke the steering column and parked the car several blocks away. None of the men notified the police about the crime.
>
> Fifteen years later, in 2009, Boutte contacted the police to provide information about the 1994 shooting, hoping this would help reduce his pending sentence for drug charges in Louisiana. It did not.
>
> Winfrey did not testify in his own defense, but he had denied all knowledge of the shooting in previous conversations with police. He never indicated that any of the other men were responsible. Each of the two Brown children identified Winfrey in a photo lineup. At trial, the State agreed to accomplice witness instructions for Boudreaux and Mouton. Winfrey requested an accomplice witness instruction as to Boutte and George, as well. The trial court refused the instruction.

*Winfrey*, at *1–2. The appellate court found that the trial court erred in refusing the accomplice witness instruction, but held the error harmless and affirmed the conviction. Petitioner did not challenge the sufficiency of the evidence on direct appeal.

Sufficiency of the evidence to support a criminal conviction on federal collateral review is measured by the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). This standard requires only that a reviewing court determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. In conducting that review, a federal habeas court may not substitute its view of the evidence for that of the fact finder, but must consider all of the evidence in the light most favorable to the verdict. *Weeks v. Scott*, 55 F.3d 1059, 1061 (5th Cir. 1995).

In support of his challenge to the evidence, petitioner points to discrepancies appearing in the statements of Boudreaux and the two children. However, resolution of such discrepancies or inconsistencies in testimony is the province of the jury. *Jackson*, 443 U.S. at 319. Inconsistencies in the evidence, or a petitioner's disagreement with the jury's resolution of those inconsistencies, do not give rise to a due process violation or to insufficiency of the evidence under *Jackson*. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005) (holding that in a legal sufficiency review, all credibility choices and conflicting inferences are to be resolved in favor of the verdict).

This Court has carefully reviewed the record and finds that the *Jackson* standards were met, and that petitioner fails to establish insufficiency of the evidence. To the extent he claims that the trial court erred in denying an accomplice witness jury instruction, his claim arises under state law and presents no federal habeas issue. Regardless, this Court finds no fault with the state court's determination that any such error was harmless in light of the totality of the evidence. Petitioner would not be entitled to federal habeas relief on his claim for insufficiency of the evidence.

*Conclusion*

Respondent's motion for summary judgment (Docket Entry No. 15) is GRANTED and this lawsuit is DISMISSED WITH PREJUDICE. A certificate of appealability is DENIED. Any and all pending motions are DENIED AS MOOT.

Signed at Houston, Texas on November 30, 2015.

_____
Gray H. Miller
United States District Judge